COMMONWEALTH OF PENNSYLVA-
NIA et al., Plaintiffs,

v.

Peter F. FLAHERTY, etc. et
al., Defendants,

v.

FRATERNAL ORDER OF POLICE,
FORT PITT LODGE NO. 1,
Intervening Defendant.

Civ. A. No. 75–162.

United States District Court,
W. D. Pennsylvania.

Oct. 12, 1979.

Michael Louik, Deputy Atty. Gen., Pittsburgh, Pa., for plaintiffs.

Robert B. Smith, Asst. City Sol., Dept. of Law, Pittsburgh, Pa., for defendants.

Bryan Campbell, Pittsburgh, Pa., for intervening defendant.

## OPINION

WEBER, Chief Judge.

The defendants have petitioned this Court to permit promotions to be made in the Department of Police, City of Pittsburgh. The City of Pittsburgh, through the Civil Service Commission and the Department of Police Superintendent, desires to promote straight down the existing eligible lists for Police Sergeant and Police Lieutenant utilizing the "rule of four" and relying on the present eligible lists for only one year. The defendants' petition states that the Superintendent of Police intends to promote approximately 18 lieutenants and 28 sergeants. The plaintiffs oppose the defendants' proposal to promote straight down the eligible lists arguing that the probable and foreseeable result is that no minorities and no women will be promoted. The plaintiffs desire a system of limited

preferential promotions as a remedy for the past race and sex discrimination.

The Court is aware of the pressing need to promote eligible police officers to the supervisory ranks of sergeant and lieutenant. There have been no promotions to these ranks since 1970. In December 1977, the City of Pittsburgh Civil Service Commission administered written examinations for promotion to the positions of sergeant and lieutenant,[1] the results of which constitute the eligible lists now in issue.[2]

The statistics for the 1977 examinations indicate that of a total of 488 police officers who sat for the sergeant examination, 49 or 10.1% were minorities[3] and 439 or 89.9% were white. 39 or 81% of the 49 minority examinees passed the sergeant exam with a mean score of 82.1 while 363 or 83% of the white examinees passed with a mean score of 82.7. With regard to the lieutenant examination, 52 of the 550 examinees or 9.5% were minorities while 498 of the 550 examinees or 90.5% were white. 42 of the 55 minority examinees or 81% passed the lieutenant examination with a mean score of 80.7 while 426 of the 498 white examinees or 85% passed with a mean score of 81.6.

Although these statistics indicate no disproportionate impact upon any particular group, as the defendants argue, the bottom line is that given the ranking of the individual examinees, a system whereby promotions are made straight down the eligible lists will nevertheless result in no minorities being promoted to the rank of lieutenant and at most two minorities being promoted to the rank of sergeant, a situation directly resulting from the past practice of discriminatory hiring which we have found in this case.

The defendants state in their petition that they intend to promote 28 police offi-

1. The parties have stipulated that the tests are as good as any written exam to measure job-related areas.

2. The examinees who received a passing grade on either examinations are ranked on the appropriate eligible lists as follows: The highest score; if the same score, then by seniority; if there is still a tie in rank, then by lottery.

3. Although the female sex is often termed a minority, females are not included when we use the term "minority" throughout our discussion. Both the sergeant and lieutenant examinations were administered to only 3 females, one of whom passed the sergeant's exam.

cers to the rank of sergeant and 18 to the rank of lieutenant. The law requires that such promotions be made from among persons having completed at least 4 years service in the lower police grade, 53 P.S. § 23534, and "be based upon merit to be ascertained by civil service tests *and upon the superior qualifications of the person to be promoted as shown by his previous service and experience.*" 53 P.S. 23535. (emphasis supplied). Section 23535 further states:

> The civil service commission shall maintain a list of those persons qualified for promotion to the next superior position, from which list the director of the department of public safety shall make all promotions from among the first four names appearing on the list at the time the promotion is to be made.

The eligible list for police lieutenants includes one minority among the first 22 examinees ranked.[4] This minority examinee, however, has since been terminated. The result is that under the defendants' proposal, no minority candidate will be included in any group of four names submitted to the superintendent. Of the top 46 ranked examinees on the sergeant list, 4 are minorities. The reason we consider the first 46 names is that 13 of the top 33 names[5] on the sergeant list are among the top 22 names on the lieutenant list. We assume that these 13 individuals will accept a lieutenant position over a sergeant position and, consequently, will not be available for promotion to sergeant. We would then consider the next 13 highest names on the list reaching the 46th name ranked. Although 4 minorities are included among the first 46 ranked examinees, two have been terminated leaving only two minorities eligible for promotion to sergeant.

The resulting pool of applicants, therefore, is 100% white for the lieutenant positions and 98% white for the sergeant positions. Despite the discretion in promoting allowed the superintendent within the "rule of four", the distinct possibility remains that no minorities will be promoted. This is not a situation which provides the Court with assurance that among the newly promoted lieutenants and sergeants will be a proportion of minorities representative of the minority population in the City of Pittsburgh. The proportion of black persons in the Pittsburgh population was 20% in 1970 and 17% in 1960. The proportion of black persons in the labor force was 17% in 1974 and 17% in 1970. With respect to the composition of the lieutenant and sergeant ranks in the Pittsburgh police force, at the time of the Stipulation to Certain Facts dated and filed January 10, 1978, there were 92 sergeants, 5 of whom were black and 31 lieutenants, none of whom were black. Inasmuch as no promotions have occurred since 1970, the number of minority sergeants and lieutenants, if changed at all, is fewer.[6]

■ The critical problem with the defendants' proposal to hire straight down the eligible lists is the basis upon which these lists are compiled. The statute requires that the Civil Service Commission maintain a list of those persons qualified for promotion. The defendants restrict "qualified for promotion" solely to percentage score on the two promotional examinations. The statute states that "Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission and upon the superior qualifications of the person to be promoted as shown by his previous service and experience." 53 P.S. § 23535. The defendants appear to have stopped reading after the word "commis-

4. The top 22 examinees ranked will be considered in the process of promoting 18 given the requirement that the four highest names on the list must be considered for each promotion and the fact that one of the top 21 examinees has been terminated.

5. We use the number 33 because, given the statutory requirement of considering the 4 highest names on the list for each promotion and the fact that 2 individuals among the highest 28 have been terminated, the top 33 names will have to be submitted to the superintendent in order to promote 28.

6. Plaintiffs aver that there are presently 3 minority sergeants and no minority lieutenants.

sion". "Superior qualifications", "previous service and experience" all seem to be ignored. The most consideration defendants have given previous service and experience is to break ties in score on the promotion tests by seniority. The defendants argue that they risk future complaints and lawsuits if they promote on the basis of any standard other than, or in addition to, the mark achieved on the written examination. They already have a lawsuit. We fail to see how the consideration of the other statutory criteria will promote claims of discrimination against the City.

Furthermore, the results of the two examinations demonstrate their fallibility as reliable indicators of a police officer's ability to serve as a sergeant or lieutenant when we consider the bizarre results. 421 individuals took both the sergeant's and lieutenant's examinations. 67 took only the lieutenant's exam, possibly because a substantial number were already in the sergeant's grade. 6 took only the sergeant's exam. 22 of those passing the lieutenant's exam failed the sergeant's exam. A substantial number of applicants scored higher on the lieutenant's exam than they did on the sergeant's exam. Of the top 22 ranked lieutenant examinees, ½ or 11 ranked lower than 22nd on the sergeant's exam. For example, No. 5 on the lieutenant exam is No. 27 on the sergeant's; No. 10 on the lieutenant exam is No. 37 on the sergeant's; No. 13 on the lieutenant exam is No. 46 on the sergeant's; No. 14 is No. 42 and there are many more such disparities.[7] The apparent conclusion is that by promoting on the basis of percentage scores on exams some police officers qualify for the higher ranking position of lieutenant but not for the position of sergeant. We find this anomalous, to put it mildly.

Unfortunately, the City of Pittsburgh has no records of performance criteria to enable it to meet the statutory standard of "superior qualifications . . . as shown by previous service and experience." No such evaluations are regularly made and record-

ed. The only deference to prior service is the observance of the four years of service requirement in the entry grade before being allowed to sit for the examinations, and the use of seniority (along with a lottery) to break ties in the raw scores to determine rank on the promotional list. Given the large number of ties in raw scores, it appears that the element of chance weighed heavily in compiling the list.

There are two criteria available to the City of Pittsburgh to help it meet the statutory standard of service and experience, the length of police service for all candidates, and the length of service in a lower command grade for the lieutenant's list. Although the examinations for both lieutenants and sergeants positions are open to all police officers of four years of service, there is no statutory bar to considering satisfactory service as a sergeant as one factor in compiling the lieutenant's list. It would appear that the statute commands this.

█ Given the weak and inadequate basis of the eligible lists presented to this Court, we are compelled to deny the defendants' petition to promote straight down the present eligible lists. We will allow the defendants, however, to promote up to 18 individuals to the rank of lieutenant and up to 28 to the rank of sergeant with the mandate that one of each six promoted to either rank must be minority members otherwise qualified.

We do not command how this shall be done. The officers of the City of Pittsburgh have as great a duty to follow the mandates of the Constitution as does this court. During all the progress of this lawsuit we have found very little evidence of an active effort by the City to solve the problems of race and sex discrimination by action on its own rather than relying entirely on the mandate of this court at every step. There is a pool of eligible candidates for both grades containing minority members who have at least demonstrated some capacity by scoring a passing grade on the examinations, and by prior satisfactory ser-

---

7. All examinees answered the same 75 questions which constituted the sergeant examination. Those who wished to apply for the lieu-
tenant promotions answered 50 additional questions allegedly related to the lieutenant position.

vice as patrolman and in some cases as sergeants. Because the pool of eligible candidates for lieutenant contain minority members, some of whom have experience as sergeants, and because the eligibility list for sergeants contain qualified minority members, such selection can be made within the statutory scheme.

Because the present promotional list is of limited duration, and will expire within the coming year, the problem may be ameliorated in future years because of the eligibility of minority members and women newly hired as police officers under our prior order. The effects of the prior discriminatory practices will be lessened in the future.

██ Since there was only one woman who took and passed either promotional exam, and she ranked 363 on the sergeant's exam, we have not included women in the above determination. However, we shall consider women in regard to classes of detectives. Pursuant to statutory authorization, 53 P.S. § 23536 the City of Pittsburgh has created the classifications of Detective 1st Grade, Detective 2nd Grade and Detective 3rd Grade. There are 83 Detectives 1st Grade, 13 of whom are black, 44 Detectives 2nd Grade, 9 of whom are black, and 23 Detectives 3rd Grade, 1 of whom is black. No women have been ever assigned to one of the additional classes of detectives.

Police officers are assigned to the additional classes of detectives on the basis of a particular aptitude for investigation, outstanding meritorious service, or unusual and exceptional bravery. Officers in the detective classes receive a salary not less than the maximum of salaries of patrolmen. Historically, all female police officers were routinely assigned on a permanent basis to the Missing Persons Section of the Detective Branch. Consequently, female police officers have been afforded a limited opportunity to distinguish themselves by unusual and exceptional bravery, outstanding meritorious service or aptitude for investigation. In any event, women have been overlooked for recommendation to the detective grades and this needs to be rectified.

The Superintendent of Police has managerial discretion to transfer police officers.

Such discretion should be used to place female officers in positions outside the Missing Persons Section. Furthermore, female police officers are to be recognized for meritorious service by assignment to the detective grades. We order the City of Pittsburgh to assign qualified police women to Detective 1st Grade, Detective 2nd Grade, and Detective 3rd Grade to the extent that the complement of personnel in each such grade shall be composed of not less than 10% female police officers, to the extent that vacancies are available and before any further appointments of male personnel are made.