COMMONWEALTH OF PENNSYLVA-
NIA and Guardians of Greater Pitts-
burgh, Inc., Individually and on behalf
of its members and on behalf of all
others similarly situated; National As-
sociation for the Advancement of Col-
ored People—Pittsburgh Branch, Indi-
vidually and on behalf of its members
and on behalf of all others similarly
situated; National Organization For
Women—Southwestern Pennsylvania
Council of Chapters, Individually and on
behalf of its members and on behalf of
all others similarly situated, and Donald
Allen, Benjamin Ashe, Jerome Aziz,
Richard Hurt, Adam Kinsel, Lynnwood
Scott, and Richard Stewart, Individually
and on behalf of all others similarly
situated; J. Terese Doyle, Individually
and on behalf of all others similarly
situated; Cheryl Edmonds, Rose Mitc-
hum, Linda Robinson, Joanne Rowe,
Deborah Smith and Gloria Vanda, Indi-
vidually and on behalf of all others simi-
larly situated; Harvey Adams, Mack
Henderson, Theodore Saulsbury, and
Charles Tarrant, Individually and on be-
half of all others similarly situated;
Gladys Smith, Individually and on behalf
of all others similarly situated, Plain-
tiffs,

v.

Peter F. FLAHERTY, etc., et
al., Defendants,

v.

FRATERNAL ORDER OF POLICE,
FORT PITT LODGE, NO. 1,
Intervening Defendant.

Civ. A. No. 75–162.

United States District Court,
W. D. Pennsylvania.

Jan. 9, 1980.

Michael Louik, Deputy Atty. Gen., Pittsburgh, Pa., for plaintiffs.

Robert B. Smith, Asst. City Sol., Pittsburgh, Pa., for defendants.

Charles F. Scarlata, Pittsburgh, Pa., for Villalpando.

A. Bryan Campbell, Pittsburgh, Pa., for intervening defendant Fraternal Order of Police.

## OPINION

WEBER, Chief Judge.

This is a lawsuit brought by a number of individuals on their own behalf, and certain organizations in behalf of their members. The individual plaintiffs were all described as black individuals, either male or female, or white females; the organizations were the Guardians of Greater Pittsburgh, an organization of black police officers, the Pittsburgh branch of the National Association for the Advancement of Colored People, and the Southwestern Pennsylvania Council of the National Organization for Women.

The gravamen of the complaint was that the Police Department of the City of Pittsburgh had for a long time and was continuing to apply policies of original appointment and of promotion as police officers that discriminated against blacks and women.

The initial phase of the case was concerned with entrance level requirements that had in the past and continued to operate to discriminate against black persons and females. A great deal of statistical evidence was considered, as to past and present population patterns and the past and present composition of the Pittsburgh Police Department. With reference to race this evidence dealt entirely with the distinction between white and black persons, as so identified by United States Census statistics, Police personnel statistics, and the personnel data furnished by applicants for appointment. These findings are set forth in our published Opinion on the hiring practices in D.C., 404 F.Supp. 1022, at pp. 1024 and 1025 where the findings are all set forth in terms of the percentage of "black persons" in the population, the proportion of "black persons" in the labor force, and "black persons" employed as police officers. (Similar statistics were compiled for women).

In that phase of the case the City administered its entrance level examination to 2,305 persons and reported that 27.5% of these were minorities (almost all black). No specific instance of a minority racial

designation other than black came to our attention at that time, but allowance was made in our injunctive order on hiring practices for the consideration of these by providing for the separate listing of Black male and Black female applicants (including other racial minority groups). See 404 F.Supp. p. 1031. We assume that the City of Pittsburgh has fully complied with that order because no complaint has been received that other racial groups have been affected.

The result of this phase of the case was an order to hire under a quota system for blacks and females which has been followed.

The present phase of the suit concerns the allegations of discrimination in promotions within the police department, both because of present policies and because of the present effect of discriminatory hiring policies in the past. Here we were dealing with a more limited and readily identifiable class because the plaintiffs were all presently serving police officers, and all were identified as black persons. In submitting its data on examinees the City chose to list the individuals as either "W" for white examinees, or "M" for minority examinees. Only one exception to this listing among almost 500 names is one person identified as "American Indian or Alaskan." Since this individual was far below any numerical rating on the list to qualify for any available promotional vacancy, he is immaterial to our present concerns.

Because all considerations for promotion, all examinations of the data, and all computations by the court were based on the number of white and black examinees the relief ordered by the court was directed toward that substantial class of discriminated persons, the present black officers of the Pittsburgh Police Department appearing on the examination list. We ordered promotions in accordance with the rankings on the list, allowing for the discretionary authority of the appointing officer, providing that one of each six promoted to either sergeant or lieutenant's rank shall be a minority member otherwise qualified.

This relief was designed for the particular plaintiffs affected, who were all identified as black males presently serving as police officers. It was based on evidence entirely concerned with black males. At no time in the consideration of the pleadings or the evidence with respect to race, was any person other than a black person identified, although in the City's reports and statistics the distinction is always made between those designated as "W", identifying white persons, and "M" designating minority persons. The Court adopted the language "minority members" in its order because none other than black persons were so identified, but its clear intention from all of the prior proceedings in this case was that the minority members entitled to such relief were the black persons who instituted this lawsuit, either individually or by organizations acting on their behalf.

 The City of Pittsburgh announced its intention of complying with the order. On the eve of the ceremony of inducting the promoted officers, it announced that one of the minority candidates for promotion was to be a person of Mexican descent.

An application for a Temporary Restraining Order was filed promptly by the plaintiffs and, after hearing, the City was restrained from filling the one vacancy for which the person of Mexican ancestry was designated. A further hearing was set for January 3, 1980, at which time the City's representative testified that after the examination rankings were posted, a police officer presented evidence of his Mexican ancestry to the Civil Service Commission, whereupon the Civil Service Commission ordered that he be classified as a Hispanic person on their personnel records. The City maintains records of various "minority" designations based upon certain guidelines and statistical record requirements of the Federal Equal Employment Opportunity Commission. "Hispanic" is one of these minority designations. From what we have learned, minority designations other than black in the Pittsburgh Police personnel records are minuscule, and no claim of discrimination against any such person has been raised.

The individual involved was a city policeman who had taken the promotional examination. He was listed in the "W" for white category on the examination results furnished to the Court. His ranking was below any possible consideration for the number of available appointments, unless he received the benefit of the remedial order of this Court. He has now moved for leave to intervene in this lawsuit.

At no time in this lawsuit has there been any complaint of discrimination by the City of Pittsburgh against any individual or group except black persons or women. No claim has been made and no evidence has been produced relating to any discrimination against any other race, national origin or ethnic origin. The present applicant for intervention made no such claim, and none was raised in his behalf.

█ The Court determined the present issue solely on evidence of identified black police officers who were candidates for promotion and the historical record of black representation on the police force, the work force and the general population. The relief was specifically tailored to that representation. It was entirely outside the pleadings in this case, the evidence produced and the findings of the Court, that the City determined to promote, under the relief ordered by the Court, a person who met none of these qualifications. The application to intervene of Edward A. Villalpando will be denied and the Order issued December 19, 1979 restraining and enjoining the City of Pittsburgh from making the promotion of Edward J. Villalpando will be made permanent.