**COMMONWEALTH OF PENNSYLVANIA et al., Plaintiffs,**

**v.**

**Peter F. FLAHERTY, etc. et al., Defendants,**

**and**

**Fraternal Order of Police, Fort Pitt Lodge No. 1, Intervening Defendant.**

**Civ. A. Nos. 75–162, 77–910.**

United States District Court, W. D. Pennsylvania.

Feb. 17, 1982.

Katherine H. Fein, Pittsburgh, Pa., for plaintiffs.

Thomas F. Halloran, Jr., Asst. Atty. Gen., Pittsburgh, Pa., for Commonwealth of Pa.

Robert B. Smith, Asst. City Sol., Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

This civil rights suit was initially brought by the Commonwealth of Pennsylvania, alleging discrimination against blacks and women in the hiring practices of the police force of the City of Pittsburgh. The case was heard by this court, and upon a finding of impermissible discrimination, this court ordered remedial hiring procedures be imposed in its opinion at 404 F.Supp. 1022 (W.D.Pa.1975). See also 477 F.Supp. 1263 (1979).

This aspect of the suit involves the specific claims of seven individual women who were hired prior to the remedial action imposed by this court. They now claim that although the women currently being hired have achieved the status of Police Officer, they continue to be classified as Policewomen and continue to be excluded from training programs and promotions.

Having heard the evidence in a non-jury proceeding before this court, we now make the following findings of fact:

1. Captain Therese Rocco was first hired in 1948 as a "Policewoman" and promoted to the rank of "Policewoman-Captain" in 1960. Since 1960, Captain Rocco has been assigned to and commanded the Missing Persons Section of the Investigations Branch of the Pittsburgh Police Department.

2. Officer Segernia Saunders was first hired as a Matron in 1956 and was hired as a Policewoman in 1960 after passing a competitive exam for that position. Officer Saunders has been permanently assigned to the Missing Persons Section.

3. Officer Marge Bedore was hired as a Policewoman in 1960 after passing the competitive exam. Officer Bedore was assigned to the Missing Persons Section prior to her transfer in 1979 to the Detective Desk in the Investigations Branch, a position also held by a male graded detective.

4. Officer Eileen Quinn was hired as a Policewoman in 1965 after passing the competitive exam and has always been assigned to the Missing Persons Station.

5. Officer Ellen Blacksmith was hired as a Policewoman in 1966 after passing the competitive exam and has always been assigned to the Missing Persons Section.

6. Officer Gladys Smith was hired as a Matron in 1954. In 1968, she became a Policewoman upon the elimination of the position of Matron. Since that time, Officer Smith has been assigned to the Missing Persons Section.

7. In 1966, Officers Saunders, Bedore, Quinn and Blacksmith attended the course of training administered by the Police Academy, but were prohibited from participation in Firearms Training. At the completion of their training each of these officers received a Diploma, certifying her completion of the "prescribed course for policemen".

8. In addition to their Police Academy Training, these four officers have partici-

pated in and completed a number of other courses and seminars in such areas as sex crimes, drug abuse and fingerprinting.

9. From 1965 to 1969, Eugene L. Coon was Assistant Superintendent of Police in charge of the Detective Branch, now known as the Investigations Branch, which included homicide, burglary, narcotics, vice, robbery, auto, youth and sex, and missing persons sections. During the period of his command, Mr. Coon assigned policewomen in the Missing Persons Section to perform duties in other sections of the Detective Branch. He also conducted in-service training for all members of the Branch, including Policewomen in the Missing Persons Section.

10. During the course of her employment, each of these women, at various times, has been assigned to perform work for other sections in the Investigations Branch. These other assignments often involved situations in which a female was necessary but were not limited to such occasions. The other assignments have included acting as a decoy in rape and extortion investigations, searching female prisons, crowd control during civil disorders, numbers (vice) investigations and street-car patrol. In conjunction with their participation in such assignments, there have been occasions when these female officers have provided information upon which search warrants were issued, have executed search warrants, have arrested and assisted in the arrest of suspects, have testified before the grand jury and have testified in court in criminal proceedings. In addition, these female officers have conducted background investigations, located witnesses and performed other duties at the request and assignment of other sections within the Investigations Branch.

11. These women participated in the above described assignments on a regular basis until 1975, at which time the City of Pittsburgh began to hire women as Police Officers. These post-1975 female Police Officers now perform many of the assignments previously carried out by the seven Policewomen.

12. The assignments carried out by these women involved duties and skills substantially similar to those of the male officers they assisted, with the exception that the women were not permitted to bear firearms.

13. As early as 1969, the similarity of duties was recognized by an Arbitrator who, in an Opinion and Award and Interpretation granting Policewomen equal pay with Patrolmen, dated November 14, 1968, the Arbitrator stated that "the test of whether or not a female employee was receiving equal pay must depend on the work she is performing, not on the title of her job."

14. Effective January 1, 1975, the titles of Patrolman and Policewoman were abolished and replaced by the single job title "Police Officer." The subject women are identified in seniority rosters and employment records as Police Officers. The Manual of Procedural Orders, 1978, for the Department of Police, however, retained the job description of Policewoman with certain distinctions from that of Police Officer, in particular that Policewomen are assigned to the Missing Persons Section of the Investigations Branch. Aside from this distinction, the Manual further defines the duties of a Policewoman as being "on a parity with male police officers, shall be responsible for and perform duties parallel to that of male police officers and shall be subject to all rules, regulations, orders and procedures insofar as they are applicable."

15. The Manual defines a "Detective" to include all police officers assigned or detailed to the Investigations Branch. In the Opinion and Award dated November 14, 1968, the Arbitrator ruled that all patrolmen (now known as Police Officers) in the detective branch (now known as Investigations) were to be made third grade detectives after 90 days in that division.

16. Although the Missing Persons Section is within the Investigations Branch, none of the subject women have ever been made a third grade detective despite having had far more than 90 days of service in the Investigations Branch.

17. No evidence was presented to show that the competitive examination given to Patrolmen hired prior to 1975 and to Policewomen hired prior to 1975 were different or that either were more or less job related than the other.

18. Police Officers are required to participate in on-going in-service training in the areas of Firearms, Crimes Code, Motor Vehicle Code and First Aid. Beginning in 1975, when Superintendent Robert Coll assumed command, the women hired prior to 1975 have not been permitted to participate in and have not received any of this training.

19. The reasons given for the exclusion of these women from such training programs was that the women hired prior to 1975 were not Police Officers since they had not received all the training required and because they had been hired as Policewomen.

20. Because it was believed that these women were not Police Officers, the women hired prior to 1975 have not been permitted transfers and promotions on the same basis as all other Police Officers employed by the Department of Police.

21. These women have all indicated a willingness to participate in all required training, including Firearms Training.

22. Except for the required training from which these seven female officers have been excluded, each of these women is as competent and qualified as male officers assigned to the Investigations Branch to perform the duties and responsibilities of police officers assigned to the Investigations Branch.

23. Aside from necessary exclusion from certain assignments due to lack of training in specific fields, such as firearms, the female officers assigned to Missing Persons perform substantially the same duties and have the same responsibilities as are carried out by male officers assigned to other sections within the Investigations Branch.

24. The duties and responsibilities performed by Officer Marge Bedore, who is assigned to the Detective Desk, are identical to those performed by a male graded detective.

## CONCLUSIONS

In an action for discrimination in employment the burden of proving a prima facie case rests with the plaintiffs. Once the prima facie case is established, the burden shifts to the employer to provide some legitimate non-discriminatory reason to rebut the prima facie case. The burden then shifts back to the plaintiff who, in order to prevail, must prove that the stated reason was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir. 1980); *Worthy v. U. S. Steel Corp.*, 616 F.2d 698 (3d Cir. 1980).

█ The plaintiffs in this case have established the prima facie case of discrimination as early as the time of their first hiring as policewomen, plaintiffs were treated differently from the men. They went through all the same initial training as patrolmen, except that they were excluded from firearms training. No legitimate non-discriminatory reason was ever articulated to explain the exclusion from such training. Despite this lack of training, these women were often required to participate in dangerous assignments. They were expected to perform these tasks without carrying a weapon.

Because of their lack of firearms training, policewomen were routinely assigned to the Missing Persons Section of the Investigations Branch. Although often called upon to assist Detectives in other sections of the Investigations Branch because of their skill in investigation work, the policewomen were never permanently assigned to any other section.

█ Another result of this difference in classification between patrolmen and policewomen was that these women have never been promoted to a graded detective position. Although the arbitrator ruled in 1968 that all patrolmen assigned to the Investigations Branch were to automatically be-

come third grade detectives after ninety (90) days service in that branch, the ruling did not apply to policewomen. Firearms training was a job requirement for graded detectives. Therefore policewomen were excluded from ever becoming graded detectives and the promotional opportunities which accompanies that classification. The ability to use a firearm may be a legitimate prerequisite for the position of a graded detective. But there was no legitimate reason from excluding policewomen from firearms training, which in turn, excluded them from any detectives position.

■ Finally, in 1975, when the positions of patrolmen and policewomen were abolished and all persons were hired as police officers, the plaintiffs were again excluded from the benefits of this change. The job classification of "policewomen" was maintained in the Manual of Procedural Orders. The job description of "policewomen" covers assignments to the Missing Persons Section of the Investigations Branch. Therefore, since 1975, although plaintiffs were considered police officers for personnel purposes, they continued to be confined to the job classification of "policewoman." Although other female police officers were now on the parity with men, these plaintiffs were still denied training and promotional opportunities to other sections. The maintenance of a job classification for "policewomen" in and of itself is strong evidence of discriminatory behavior.

■ Furthermore, prior to 1975, plaintiffs were receiving special police assignments and in-service training in most areas, except firearms. Up until 1975, although treated differently than the men in personnel matters, the policewomen did substantially the same type of work as patrolmen. When the police department began to hire women as police officers in 1975, plaintiffs no longer received any special police assignments or in-service training. The only reason given by defendant for their exclusion from training and confinement to the Missing Persons Section was that the women hired prior to 1975 were not Police Officers because they had been hired as policewom-

en and had not received all the training required. This cannot be a legitimate non-discriminatory reason for this action, since their hiring as policewomen and earlier exclusion from training was also a discriminatory act.

■ Plaintiffs in this action have met their burden of proving a prima facie case of discrimination. Their exclusion from certain training necessary for advancement and their confinement to jobs classified for Policewomen in the Missing Persons Section are continuing patterns of discrimination stemming from the initial dichotomy of treatment between patrolmen and policewomen existing at the time of plaintiffs' hiring. Defendant has failed to articulate any legitimate non-discriminatory reason for this discrepancy in treatment, and plaintiffs must prevail.

■ Included in plaintiffs' general prayer for injunctive relief is a request for an award of adjusted backpay with interest. Such awards are authorized by 42 U.S.C. § 2000e–5(g). It also is well-established that after liability has been found in a discrimination action, a presumption arises that the prevailing parties are entitled to back pay. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 259 (5th Cir. 1974); *Carter v. Shop Rite Foods, Inc.*, 470 F.Supp. 1150, 1155 (N.D.Tex.1979). However the court does not at this time have before it any information on which to adequately calculate such an award. Therefore, the parties are requested to prepare a stipulation as to such an award in accordance with the standards mandated in *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). In the event that no agreement can be reached the parties will be required to submit their alternative methods of calculation for final determination by the court.

## ORDER

AND NOW, this 17th day of February, 1982, in accordance with the foregoing, IT IS ORDERED as follows:

1. That the female Police Officers hired prior to 1975 will be considered to be Police Officers for all purposes.

2. That each of these female Police Officers shall immediately be afforded the opportunity to participate in all in-service training which may hereafter be provided to Police Officers in the City of Pittsburgh, Department of Police.

3. That each of these female Police Officers shall immediately be promoted to the rank of 3d grade Detective based upon her service of more than 90 days in the Investigation Branch of the Department of Police.

4. That each of these female Police Officers shall immediately be afforded the opportunity to apply for transfer to another section or Branch within the Department of Police, and shall be considered for transfer to available openings on an equal basis with all other Police Officers as if she had completed the necessary in-service training, with the provision that the effective date of any such transfer may be delayed until the completion of the necessary in-service training.

5. That each of these female Police Officers shall immediately be afforded the opportunity to be considered for promotion beyond the rank of 3d grade Detective and shall be considered for such promotion on an equal basis with all other Police Officers as if she had completed the necessary in-service training, with provision that promotion beyond the rank of 3d grade Detective shall immediately be made available within the Missing Persons Section of the Investigations Branch on the same basis as such promotions are available to Police Officers assigned to other Sections of the Investigations Branch and no Female Police Officer shall be required to obtain a transfer to another Section or Branch of the Department of Police in order to be considered eligible for such promotion.

IT IS FURTHER ORDERED that the parties shall prepare a stipulation on the appropriate award of back pay to be filed on or before *March 17, 1982.* In the event that such a stipulation cannot be agreed to, plaintiffs shall file their proposed award on or before *March 22, 1982.* Defendants shall file any objections and its alternative proposed award on or before *March 29, 1982.*