Civil Service Commission of the City of Pittsburgh and Dr. Marion K. McKay, Dr. Albert T. Statti and Rev. James B. Cayce, all Members of the said Civil Service Commission; and the City of Pittsburgh, a municipal corporation, Joseph M. Barr, Mayor of the City of Pittsburgh, David W. Craig, Director, Department of Public Safety, City of Pittsburgh, Appellants, v. Paul J. Walsh, Jr., Appellee.

Argued November 9, 1973, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*Thomas S. White*, Assistant City Solicitor, with him *Ralph Lynch, Jr.*, City Solicitor, for appellants.

*H. David Rothman*, for appellee.

OPINION BY JUDGE WILKINSON, February 4, 1974:

This action in mandamus was brought by appellee on February 9, 1968, to have the court order appellants to certify him as a permanent employee on the Civil Service rolls as a patrolman in the City of Pittsburgh, Bureau of Police, effective September 5, 1966, or, in the alternative that he be given a hearing according to the administrative procedure mandated by the Civil Service Law and the practices of the Pittsburgh Bureau of Police.

On June 6, 1966, after satisfactorily completing the preliminary requirements, appellee was sworn in as a police officer in the City of Pittsburgh and began his three months' probationary period. On September 6, 1966, by being handed a letter dated September 5, 1966, appellee was informed by the then Director of Public Safety of the City of Pittsburgh that his conduct had

not been deemed satisfactory and that his employment was terminated.

On September 21 or 22, 1966, appellee had a conference with the then Director of Public Safety, protesting his termination and was told that the Director would look into the matter. On January 19, 1967, appellee had another appointment with the Director and was told that the Director would make a new investigation. On July 20, 1967, the Director wrote the Civil Service Commission and recommended appellee be reinstated as a police officer in the Bureau of Police. He stated his reasons for the recommendation as follows: "He was appointed on June 6, 1966 and was not certified for permanent appointment at the end of his probationary period. Subsequent investigation satisfies me that his performance during the probationary period was satisfactory. For that reason I recommend his reinstatement."

It is stipulated by the parties that appellee's employment as a police officer was not terminated as a result of any political, racial or religious reasons, or any other discrimination encompassed by the statute.

By letter dated January 19, 1968, the Civil Service Commission notified appellee that it would not honor the recommendation for reinstatement. Appellee requested a hearing and, by letter dated January 31, 1968, the Commission informed appellee he was not entitled to a hearing. This action in mandamus followed on February 9, 1968.

The lower court quite accurately stated the question here presented to be a very narrow one. It stated the question to be: "The critical matter for our determination is whether the Director of Public Safety possessed the power and authority to reinstate the Plaintiff some ten months following the end of his probationary period." The lower court answered this question in the affirmative and ordered reinstatement as of the date of

the Director's decision to recommend reinstatement, i.e., July 20, 1967. We must reverse.

It is appropriate to point out that all parties agree that this is not a proper case for reinstatement as that term is used in Section 4 of the Act of August 10, 1951, P. L. 1189, 53 P.S. §23533. As noted by appellee, that procedure presupposes a previous legal separation. As presented by appellants, that procedure necessarily involves the exercising of discretionary power by the Commission. Admittedly, mandamus would not be an appropriate procedure if the Commission is vested with discretionary power as it would be under that section.

Section 8 of the Act of May 23, 1907, P. L. 206, 53 P.S. §23440,[1] by authority of which appellee asserts his rights in this action, provides in appropriate part, as follows: ". . . All original appointments to the competitive and noncompetitive classes of the service shall be for a probationary period of three months: Provided, however, That at any time during the probationary period the appointee may be dismissed for just cause, in the manner provided in section twenty. *If at the close of this probationary term, the conduct or capacity of the probationer has not been satisfactory to the appointing officer, the probationer shall be notified, in writing, that he will not receive absolute appointment, whereupon his employment shall cease*; otherwise, his retention in the service shall be equivalent to his final appointment." (Emphasis supplied.)

The Pennsylvania Supreme Court has ruled squarely that the appointing officer's decision as to whether

---

[1] A question might have been raised as to whether this Act is applicable. Counsel for appellant and counsel for appellee agree that it is. An opinion of the former City Solicitor, later Judge of the Third Circuit Court of Appeals, Hon. DAVID STAHL, dated August 11, 1966, addressed to the Secretary of the Civil Service Commission of the City of Pittsburgh, with a copy to the Director of Public Safety who handled this case, advised that it is. The lower court so stated. It was not raised before this Court.

the probationer's conduct was unsatisfactory during the probationary period is final and not appealable. In *Matz v. Clairton City*, 340 Pa. 98, 16 A. 2d 300 (1940), charges had been filed against a probationer for his removal during the probationary period. These charges were disproved. Nevertheless, at the end of the probationary period, the appointing authority removed him on the grounds that his conduct had been unsatisfactory. The probationer brought an action in mandamus which was dismissed, the court ruling: "This for the reason that by the provisions of this rule [establishing a three-month probationary period] the appointing power is the sole judge as to whether the temporary appointment shall become a permanent one at the expiration of the probationary period of three months, and the question of the reasonableness of its judgment is not one for the court or jury. It is well settled that mandamus will not lie to revise the action of one clothed with discretionary powers."

That this continues to be the law in Pennsylvania is clear from *Hunter v. Jones*, 417 Pa. 372, 207 A. 2d 784 (1965), wherein the court had before it a mandamus action filed by probationers who were terminated by being notified that their work was unsatisfactory. The terminated employees alleged that their termination resulted from unlawful discrimination and demanded a hearing before the Commission. Justice ROBERTS, speaking for a unanimous court, said that while there was no appeal on the question of whether the work was satisfactory, there could be a hearing as to whether there had been unlawful discrimination as alleged. That is not this case. Quite the contrary. Any improper motive for termination such as political, racial or religious reasons is expressly eliminated by the stipulation in this case. *See also Commonwealth ex rel. Lisk v. Davis*, 126 Pa. Superior Ct. 136, 190 A. 403 (1937).

Therefore, as previously stated, the sole question here is whether the appointing authority can honestly exercise his discretion at the end of the probationary period terminating the probationer's employment and, ten months later, reconsider his decision and vacate the original termination.

The court below held that the appointing authority could reconsider his decision but adopted a "middle-ground position," holding that the probationer would be reinstated as of the time of the reconsidered decision. This "middle-ground position" is not supported by any of the litigants.

The lower court relied on *Wood v. Griffith,* 66 Pa. Superior Ct. 290 (1917), as authority for its action. In that case, the court approved the action of the Civil Service Commission accepting the recommendation of the appointing authority, made within three weeks of the original decision, that it could correct his error. Not only is that not this case, indeed, the Superior Court there stated that the appointing authority's decision could be corrected "if promptly presented for review before the proper tribunal." Certainly ten months to reconsider a decision based on three months' performance could not be characterized as promptly.

Any reliance placed by the court below on *Goldberg v. Philadelphia,* 279 Pa. 356, 123 A. 851 (1924), is misplaced. In that case, the Civil Service Commission had dismissed an employee, but after trial, modified its order to a suspension based on after-acquired evidence. The court found that the Commission had acted within its delegated powers.

Even in those instances where the decision of the appointing authority is subject to challenge by those adversely affected, formal action must be taken promptly by those who would challenge the decision. In this case, appellee never took any formal action. If the appointing authority can *sua sponte* "correct" its discre-

tionary action taken some ten months before, could it do so if the action had been taken some ten years before? To ask the question is to receive the answer. If corrective action can be taken *sua sponte*, which we do not decide, surely it would have to be limited to that period when the decision could be formally challenged, if challengeable.

The decision of the court below is reversed and the plaintiff's requests in his amended complaint in mandamus are denied, and the amended complaint is dismissed.