559 A.2d 121

CIVIL SERVICE COMMISSION, City of
Pittsburgh, Appellant,

v.

Joseph R. PAIESKI, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 8, 1989.

Decided May 25, 1989.

Petition for Allowance of Appeal Denied March 12, 1990.

Judith W. Spain, Asst. City Sol., D.R. Pellegrini, City Sol., Joseph Quinn, Pittsburgh, for appellant.

Bryan Campbell, Pittsburgh, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, COLINS, McGINLEY and SMITH, JJ.

DOYLE, Judge.

This is an appeal by the City of Pittsburgh (City) from an order of the Court of Common Pleas of Allegheny County which reversed the action of the Pittsburgh Civil Service Commission (Commission) which upheld the removal of Joseph R. Paieski's name from the certified list of employees eligible for promotion to police sergeant.

The facts appear to be undisputed. The City's Police Superintendent desired to promote fourteen individuals to available positions as police sergeants. The Commission certified to him the names of five persons to fill three

"minority" vacancies and twenty persons, including Paieski, to fill eleven "white male" vacancies.[1] Paieski was not chosen for any one of the positions. Subsequent to the selection process, Paieski received a letter from the Commission indicating that because he had been passed over for promotion three times his name was being removed from the eligible list.[2] Paieski requested a hearing before the Commission which was granted. The Commission upheld the removal of Paieski's name from the list. Appeal to the common pleas court followed and the Commission's determination was reversed. The City then took the instant appeal to this Court.

At issue here is the certification procedure employed by the Commission. Pursuant to Section 6 of the Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. § 23535, commonly known as the Policemen's Civil Service Act, vacancies for police officers in second class cities are to be filled by promotion as follows:

1. We note that the opinion of the trial court states that Paieski's name "along with 23 other certified names" was submitted to the Police Superintendent for appointment to eleven vacancies. In the briefs submitted to this Court, both parties recite that a total of twenty-three names were certified (Commission brief p. 7; Paieski brief p. 2); yet the certified list introduced into the record before the Commission (exhibit 1, RR 8a, 21a) reveals that only the names of *twenty* white males were certified to the Police Superintendent to fill "eleven white" vacancies, and that the names of five officers were submitted to fill "three minority" vacancies. No issue of discrimination or mandatory minority representation was ever raised by either party at any stage of the proceedings. By order dated December 5, 1988 this Court directed the parties to file supplemental briefs discussing, *inter alia*, "[T]he impact of U.S. District Court's orders in *Commonwealth v. Flaherty*, 404 F.Supp. 1022 (W.D.Pa.1975), and *Commonwealth v. Flaherty*, 477 F.Supp. 1263 (W.D.Pa.1979), on the Pittsburgh Civil Service Commission's promotion, certification procedures." The parties in those briefs advised us that the District Court's orders are not at issue in this case. We were also advised in the supplemental briefs that the employment of "white" and "minority lists" was in accord with the consent decrees. Thus neither the constitutionality nor the legality of the decrees is in issue here.

2. Paieski was the fifth name on the list certified by the Commission to the Superintendent of Police with a score of 97.5; Robert McNeilly was first with a score of 104 and Thomas Neill was listed twentieth *(see n. 1)* with a score of 94.0. It is obvious therefore that Paieski's name *had* to be passed over three times if eleven promotions were made and Paieski was not one of those promoted.

Vacancies in positions in the competitive class shall be filled by promotions from among persons holding positions in a lower grade in the bureau of police. Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission and upon the superior qualifications of the person to be promoted as shown by his previous service and experience. The civil service commission shall maintain a list of those persons qualified for promotion to the next superior position, *from which list the director of the department of public safety* [3] *shall make all promotions from among the first four names appearing on the list at the time the promotion is to be made.* The civil service commission shall have the power to determine in each instance whether an increase in salary constitutes a promotion. (Emphasis added.)

As can be seen, this statute does not specifically address the certification procedure to be followed where there are multiple vacancies to be filled simultaneously. Further, *it does not authorize the removal of any eligible name from the list* once an employee has been passed over for promotion.

The Commission, in this instance, instead of certifying four eligibles at a time, certified twenty eligible names for eleven "white male" positions. In so doing it followed its own regulation which provides:

If there be more than one vacancy in the competitive class to be filled, certification and appointment shall be made for each of such vacancies in the same manner as for a single vacancy; but in order to expedite the making of multiple appointments, the Civil Service Commission may, at its discretion certify to the appointing officer the largest number of names which would be certified were appointments to be made singly, *e.g.,*

---

**3.** The Act is explicit in stating that the Director of Public Safety shall make all promotions; why the Commission certified the names to the City's Police Superintendent is not explained.

| No. of Positions | No. of Names Certified |
|---|---|
| 1 | 4 |
| 2 | 5 |
| 3 | 6 |
| 4 | 10 |
| . . . | . . . |
| 11 | 23[4] |
| . . . | . . . |

The appointing officer shall, upon that certification, make appointments to fill all of the vacancies at the same time, appointing only such persons upon the list as would have been selected had he/she made the appointments one at a time upon separate requisition and certification, and charging to each eligible name its due number of rejections in the manner prescribed in Section 14 of the General Civil Service Act, as amended.

Commission Rule VI (emphasis added).

Paieski contends that the procedure employed by the Commission is invalid because it is in conflict with Section 14 of the Act of May 23, 1907, P.L. 206, *as amended*, 53 P.S. § 23446, the *General* Civil Service Act. That Section provides as follows:

Every position or employment in the competitive class, unless filled by promotion, transfer, reinstatement, or reduction, shall be filled only in the following manner: The appointing officer shall notify the civil service commission of any vacancy in the service which he desires to fill, and shall request the certification of eligibles. The commission shall forthwith certify, from the appropriate eligible list, the names of the three persons thereon who received the highest averages at examinations held under the provisions of this act. The appointing officer shall, thereupon, with sole reference to the relative merit and fitness of the candidates, make an appointment from the *three names* so certified: Provided, however, That should

4. We assume that in certifying twenty names, rather than twenty-three, as the regulation directs, the Commission was somehow adapting the numbers to reflect the total number qualified. *See* n. 1.

he make objection, to the commission, to one or more of these persons, for any of the reasons stated in section ten of this act, and should such objections be sustained by the commission, the commission shall thereupon strike the name of such person from the eligible list, and certify the next highest name for each person so stricken off. As each subsequent vacancy occurs, in the same or a similar position, precisely the same procedure shall be followed: *Provided, however, That after any name has been three times rejected, for the same or a similar position, in favor of a name or names below it on the same list, the said name shall be stricken from the list.* When there are a number of positions of the same kind to be filled at the same time, each appointment shall, nevertheless, be made separately and in accordance with the foregoing provisions.... (Emphasis added.)

This Act is the *General* Civil Service Act governing classified civil service employees in cities of the second class and was enacted in 1907. The *Policemen's* Civil Service Act governs police officers of second class cities and was not enacted until 1951.

■ Although we reject Paieski's contention as appellee that the certification procedures are governed by Section 14 of the General Civil Service Act, we also reject the City's and Commission's position, as appellants, that the procedures followed were proper. The trial court determined that the Commission's regulation was in conflict with the applicable statutory procedures. It, therefore, concluded that the City had violated Paieski's rights, reversed the Commission's action, and directed that Paieski's name be reinstated to the eligible list.[5] We affirm that order.

At issue are two separate activities of the Commission. The first is the mass certification of eligibles by the Commission, and the second is the removal of Paieski's name

---

5. We note that Paieski's only appeal to the common pleas court was from the Commission's removal of his name from the eligible list. Therefore, Paieski's non-selection for one of the eleven vacancies is not an issue before this Court.

from the eligible list.[6] Initially, we examine the propriety of the removal of names from the eligible list.

 Nothing in Section 6 of the Policemen's Civil Service Act authorizes such an action. To the contrary, because the Policemen's Civil Service Act specifically directs that all promotions must be made "from among the first four names appearing on the [certified] list" and must be based upon merit to be ascertained by tests and superior qualifications determined by previous service and experience (which is how a police officer's name arrives on the promotion list), to allow the Director of Public Safety to strike a name off the list because he, the Director, has three times rejected the officer—which could be for any reason, of course, including a non-merit reason—would contravene the clear mandate of the Policemen's Civil Service Act.[7] To

6. The narrow question of the authority to remove names from an eligible list has not been directly presented to us for review. We do not believe, however, that it is waived since the waiver rule is not applicable to appellees, *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955); *Commonwealth v. Pittman,* 179 Pa.Superior Ct. 645, 118 A.2d 214 (1955), and it is Paieski (the appellee) who is hurt by the exercise of this power. Moreover, the trial court found only that "the [statutory] promotion procedures were not strictly followed and, thus, were not valid." This is quite correct although the specific basis upon which the court's decision rested is not clear. We, as a reviewing Court, may, however, affirm the decision below on any basis clear on the record. *Rhoads v. Lancaster Parking Authority,* 103 Pa.Commonwealth Ct. 303, 520 A.2d 122 (1987), *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987). Furthermore, the failure to cite a specific statutory authority by a trial court does not constitute a waiver of a legal theory since the missing citation is not itself a new theory but merely *authority* for the theory presented below. *Doe–Spun, Inc. v. Morgan,* 93 Pa.Commonwealth Ct. 447, 502 A.2d 287 (1985). In the instant case, the theory argued below was that invalid promotional procedures were employed; the removal of names from an eligible list constitutes a part of the challenge to those procedures. Thus, the *Doe–Spun* rule applies. *See also Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A.2d 861 (1959) (in ruling upon a demurrer a court must consider the complaint under the relevant law and the failure of the plaintiff to identify or cite the proper statute under which recovery would be permitted does not constitute a waiver of the right to recover under that statute).

7. This is also made abundantly clear by considering the 1955 amendment of the Policeman's Civil Service Act, amending Section 6 of the 1951 Act. The 1951 Act had mandated that "the director of the department of public safety shall not pass over any name appearing on the civil service commission list for promotion until the promotion

argue that the Director has the authority to strike off someone's name because some other department head has such authority, is to torture the legislative intent underlying that Act and in a similar case, where the positions to be filled were in the *Allegheny County* Bureau of Police, our Supreme Court so held. The Court wrote, "To adopt the interpretation of this language urged by [the county commissioners—that the written examination was not the *only* way to ascertain merit] would torture the plain meaning of the statutory provision." *McGrath v. Staisey*, 433 Pa. 8, 11, 249 A.2d 280, 281 (1968). The *McGrath* Court then went on to discuss the latitude given the commissioners in the section dealing with *original* appointments where the statutory language at that time stated, "the county commissioners shall thereupon, with sole reference to the merits and fitness of the candidates, make an appointment from the three names certified ..." and the court explained, "this is a clear indication of a degree of discretion granted by the Legislature to the county commissioners in making original appointments; such a degree of discretion is not present in the promotion section of the Act." *Id.*, 433 Pa. at 12, 249 A.2d at 281.

Likewise, in the situation now presented to us, the Policemen's Civil Service Act requires that the choice for *promotion* be from among the first four names on the certified list with no provision for striking off anyone's name; the

is first tendered to the first name thereon and then only when said person refuses said promotion or is physically unable to carry out the duties of the new position." This language was deleted in 1955 and replaced with the present language requiring the Director to make all promotions *"from among the first four names appearing on the list at the time the promotion is to be made."* Giving the Director the discretion to choose among the first four names, instead of allowing him no choice at all, cannot conceivably be interpreted as granting to the Director the discretion to strike a name completely off the list because he rejected the individual three times. (See dissent p. 129). The historical note to 53 P.S. § 23535 bears out this sound legislative intent and pertinently states:

The former provisions which required promotions in the order in which names appeared on the list and prohibited the passing over a name were deleted in 1955 in favor of a provision for promotions from among the first four names on the list.

General Civil Service Act, on the other hand, provides that for *original* appointments the appointing authority shall make the appointment from the top three names so certified and, more important, further explicitly provides that any name three times rejected in favor of a name below it "shall be stricken from the list." It is readily apparent that the underlying purposes of the two provisions are entirely different, and that the Legislature palpably intended two different procedures, one for original appointments and one for promotions.

Moreover, in following section 14 of the General Civil Service Act dealing with *original* appointments, the Commission not only applied the wrong act, it also applied the wrong section of the wrong act. *Promotions* under the General Civil Service Act are governed by Section 16 of that Act, 53 P.S. § 23449, not Section 14, 53 P.S. § 23446, and no strike-off provision is contained in Section 16, even for promotions in the general classified service. The first sentence of Section 14 of the General Civil Service Act, which the Commission used for the promotion process, plainly states, "Every position or employment in the competitive class, *unless filled by promotion,* transfer, reinstatement or reduction, shall be filled only in the following manner...." Because the Commission's own regulation, Commission Rule VI, which the Commission followed for its mass certification, refers only to Section 14 of the General Civil Service Act, and that Section deals only with original appointments, not promotions, the Commission committed clear legal error.

■ Section 14 of the General Civil Service Act does not apply to the promotion of police officers and is in direct conflict with the Policemen's Civil Service Act. Section 11 of the Policemen's Civil Service Act repealed Section 14 of the General Civil Service Act insofar as it related to "employes in bureaus of police in cities of the second class." *See* the Historical Note following 53 P.S. § 23531. We do not view this repeal provision as totally negating application of the General Civil Service Act to all police matters,

because, where possible, statutes pertaining to the same subject matter should be read in *pari materia*. *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261 (1978); *see also* Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932. We do, however, believe that where, as here, a provision of the Policemen's Civil Service Act deals specifically with a particular matter, the provisions of the General Civil Service Act dealing with that same specific subject matter are not applicable to police officers. Here, Section 6 of the Policemen's Civil Service Act deals specifically with promotion procedures to be employed in situations involving police officers and there is no provision for the removal of any applicant once the applicant is placed on the certified promotion list. To the contrary, as previously explained, Section 6 states specifically that *all* promotions shall be made from among the first four names on the list. The removal of any one name from that list would, therefore, be directly contrary to the Policemen's Civil Service Act. Moreover, it is clear that civil service provisions which govern promotion to fill vacancies must be strictly construed, *Mahofski v. City of Pittsburgh*, 22 Pa.Commonwealth Ct. 629, 350 A.2d 423 (1976). Since nothing in Section 6 of the Policemen's Civil Service Act empowers the Director of Public Safety to remove names from the eligible list, in removing Paieski's name from the list the Director and Commission did not follow the strict provisions of the Policemen's Civil Service Act, but rather read into Section 6 a power which was never granted. Accordingly, the Commission committed error in removing Paieski's name and, his name should, therefore, be reinstated to the relevant eligible list.

The other question which presents itself for consideration is whether the mass certification of names employed by the Commission is statutorily permissible. We do not believe, however, that it is necessary to squarely decide this question today in light of our disposition of the appeal on other

grounds.[8] It is logically compelling however that if the

8. Our Supreme Court in *Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A.2d 861 (1959), has given us plain and lucid direction regarding the standard of an appellate court when reviewing a decision of a trial court which has determined that a plaintiff or petitioner has asserted a valid cause of action:

> For present purposes so much may be assumed [that plaintiff did not argue or rely upon the statutory authority which the Supreme Court found controlling]. However, the rule that, on appeal, we will not consider a matter which the appellant did not raise in the court below or the lower court did not pass upon is not applicable to a question whether the facts pleaded in a complaint state a good cause of action. What we review in such instance on appeal is exactly what the court below had before it, viz., the sufficiency of the complaint under relevant law. If there is a positive statute that, on the basis of the facts pleaded, gives the plaintiff a cause of action, no other course is open to a court than to sustain the complaint. The fact that the plaintiff may have relied in the court below upon an inapplicable statute does not impair or thwart the efficiency of the complaint to set forth a justiciable cause so long as there is a statute conferring the right under the facts pleaded.

*Id.,* 397 Pa. at 633–634, 156 A.2d at 863–864.

The dissent's reliance on *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975), is misplaced because the Supreme Court was there admonishing the Superior Court for *reversing,* not affirming, a trial court for an issue not asserted by the appellant. Likewise, in *Snyder v. Department of Highways,* 19 Pa.Commonwealth Ct. 96, 338 A.2d 764 (1975), this Court was speaking of the *appellant's,* not appellee's, waiver of an issue she did not assert until after the appeal was taken: "We do not believe that it would be proper for us to consider the merits of Snyder's appeal because she did not object to the procedure used by the lower court. We have stated many times that we will not pass upon issues which were not raised or considered below." *Id.,* 19 Pa.Commonwealth Ct. at 98, 338 A.2d at 766.

The doctrine of waiver is simply not applicable to appellees in a situation such as this where the issue is not an affirmative defense which could be waived by an appellee. *Sherwood.* (See note 5 infra.) No direct authority has been given by the dissent for the principle that an appellate court cannot, sua sponte, acknowledge controlling law to affirm a trial court decision, nor could it, for to assert such would require an appellate court to ignore a controlling statute, or a case of clear precedential value, which an appellee overlooked and an appellant purposefully ignores. An appellate court should not be made to wear blinders knowing full well the correct result demanded by a controlling statute. To allow a contrary result would be untenable. Furthermore, this Court, sua sponte, requested both sides in this litigation to submit supplemental briefs addressing, *inter alia,* the effect of the Policemen's Civil Service Act upon the General Civil Service Act, and specifically Section 14 of the latter Act. Both parties did so. Any charge of surprise therefore (see dissent note 1) falls on hollow ground.

mass certification of names to the Director of Public Safety must assume that *some* names will be passed over in order to attain the numbers indicated in Commission Rule VI, and, that by our decision today the Director is prohibited from striking *any* name from the list, then the mass certification procedure as it exists now *has* to be flawed. Furthermore, since Commission Rule VI specifically refers only to Section 14 of the General Civil Service Act, which Section deals *only* with *original* appointments, the Commission's use of a mass certification procedure for promotions is additionally flawed.

Accordingly, we affirm the order of the trial court.

## ORDER

NOW, May 25, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed and it is directed that the Commission reinstate the name of Joseph R. Paieski to the relevant eligible list.

CRAIG, Judge, concurring and dissenting.

## I.

## Pittsburgh's General Civil Service Act And Its Police Civil Service Act Are In Pari Materia

This court today has soundly reaffirmed that the Pittsburgh General Civil Service Act, Act of May 23, 1907, P.L. 206, *as amended*, §§ 1–29, 53 P.S. §§ 23431–23462, and that city's Police Civil Service Act, Act of August 10, 1951, P.L. 1189, *as amended*, §§ 1–10, 53 P.S. §§ 23531–23540, are to be read in *pari materia*, by rightly holding that the Police Act repealer is not to be viewed "as totally negating application of the General Civil Service Act to all police matters, because, where possible, statutes pertaining to the same subject matter should be read in *pari materia*." (P. 126.)

That view is consistent with this court's decision in *Civil Service Commission of the City of Pittsburgh v. Walsh,* 12 Pa.Commonwealth Ct. 26, 315 A.2d 326 (1974). The *pari materia* approach is also consistent with the approach of both sides and the trial judge in this case, all of whom relied on the General Act as being applicable to this police promotion issue, as is indicated by this court's acknowledgment of "Paieski's contention as appellee that the certification procedures are governed by Section 14 of the General Civil Service Act...." (P. 124.)

The reason for continued reliance on the General Act with respect to police civil service procedures is clear; the Police Act contains no provisions whatsoever for:

1. The very existence of the Civil Service Commission;
2. The Commission's powers, composition and support;
3. Competitive examination and application specifics;
4. Protection against political discrimination;
5. Veterans' preference; and
6. Adoption of civil service regulations.

All those essentials, indispensable if police civil service protection is to exist, must be drawn from the General Act.

In the General Act, sections 2–6, 53 P.S. §§ 23432–23437, create the Commission and provide for its powers (including subpoena power), staff and accommodations. Sections 8–10, 53 P.S. §§ 23440–23442, set the rules for all applications and competitive examinations. Section 23, 53 P.S. § 23457, forbids discrimination for political or religious reasons. Section 1, 53 P.S. § 23431, provides for veterans' preference in hiring. Section 6 gives the Commission rule-making power, which is essential, under section 8, for the administration of competitive examinations. None of these provisions are contained in the Police Act, in any form.

This court's reaffirmance of a relationship between the two statutes serves to maintain a sound legal foundation for the police merit system in the Commonwealth's second largest city.

## II.

### Removal Of Passed–Over Names From The Promotion List Is An Essential Feature, But It Was Not An Issue Here

Unfortunately, the framing of relief in this case, on the basis of an issue not raised by the parties, will cause substantial problems for that same merit system. This court's opinion (p. 124, n. 6) forthrightly states that:

> The narrow question of the authority to remove names from an eligible list has not been directly presented to us for review.

That being the case, this court should not get into a non-jurisdictional issue which was not presented.

Paieski's counsel stated for the record that the "only point ... we are talking about is 'one of your rules, Rule 6, Section 2,'" which is the mass-certification rule, not the name-removal rule (RR. 5a).

The accepted appellate principle, that we may affirm the decision of a trial court upon grounds different from that used by the trial court, does not justify the approach taken, because the equally sound coordinate principle is that an appellate court should never pursue non-jurisdictional issues not raised by the parties.

The Pennsylvania Supreme Court has specifically enjoined the Superior Court—and therefore this court also—from deciding cases on the basis of an issue raised sua sponte by the court, even a constitutional issue. In *Wiegand v. Wiegand*, 461 Pa. 482, 484, 337 A.2d 256, 257–58 (1975), the Supreme Court said:

> The Superior Court by sua sponte deciding the constitutional issue exceeded its proper function of deciding controversies presented to it. The court thereby unnecessarily disturbed the processes of orderly judicial decision-making. *Sua sponte consideration of issues deprives counsel of the opportunity to brief and argue the issues and the court of the benefit of counsel's advocacy....*

Furthermore, sua sponte determinations raise many of the considerations that led this Court to require without exception that issues on appeal be properly preserved for appellate review by timely objection in the trial court. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974)....

It must therefore be concluded that the Superior Court should not have considered an unpresented issue, but instead resolved the appeal in the basis of the issues raised *by the parties.* (Emphasis added.)

The Commonwealth Court has also stated:

It is axiomatic that we will not pass upon issues which were not raised or considered below. *Snyder v. Department of Highways,* 19 Pa.Commonwealth Ct. 96, 338 A.2d 764 (1975).

*Clifford Township v. Ransom,* 41 Pa.Commonwealth Ct. 211, 398 A.2d 768 (1979).

The two rules work together consistently. An appellate court may affirm the decision of a trial court on a different ground, without regard to the ground the trial court relied upon, *but only if the parties have raised that different ground in the case.*

Very commonly, parties will present a trial court with alternative grounds for decision. If the trial court errs in selecting one of those alternatives as its basis, the first-stated principle above allows the appellate court to select a different one, but it does not allow the appellate court to select a non-jurisdictional issue which has not existed in the case before.

Pennsylvania courts have long understood how the two rules work together. In *Estate of King,* 183 Pa.Superior Ct. 190, 198, 130 A.2d 245, 249 (1957), the Superior Court stated:

Although we may affirm a decree for reasons other than those given by the court below, a decree will not be

reversed for reasons which were not raised before, or as in this case not even on appeal.

Although the Superior Court referred to reversal, the principle is equally applicable to affirmance.[1]

Moreover, application of the name removal power, in the General Act, is essential if the Police Act is to function with respect to promotions as the legislature intended. The Police Act gives the appointing authority the power to select among the first four names for promotion. Obviously, if we fail to incorporate the general rule providing for the deletion of names passed over thrice, promotions ultimately would have to be given to *all* persons on the list. That result cannot be intended because the Act of June 10, 1955, P.L. 147, § 3, *deleted* the former provision which had prohibited passing over names and had thus formerly required promotions in the order in which the names appear on the list. (Historical Note to 53 P.S. § 23535).

### III.

### Mass Certification Is Lawful and Reasonable

After reaching a decision to grant relief on the basis of an issue admittedly not presented, this court's opinion declines to decide squarely the mass or group certification issue which *was* presented. The opinion acknowledges the presentation of the issue by stating:

> The other question which presents itself for consideration is whether the mass certification of names employed by the Commission is statutorily permissible.

P. 126. But then it adds: "We do not believe, however, that it is necessary to squarely decide this question today in

---

1. This principle that a court will not surprise the parties with new issues is independent of the waiver rule holding that only appellants, not appellees, are confined to matters raised below. *Township of Ridley v. Pronesti,* 431 Pa. 34, 244 A.2d 719 (1968). Introduction here of the issue of authority for name removal, after three passes, is not authorized because it is a new non-jurisdictional question, rather than because the appellee did not pursue it below.

light of our disposition of the appeal on other grounds." (P. 126.)

The group certification procedure, designed for efficiency, is embodied in a regulation of the Commission, its Rule V. The Commission's power to make regulations is in the General Act, § 6, not in the Police Act, and therefore suggests another reason for reading the two acts in *pari materia*. Paieski counsel agreed on the record, saying:

The law is clear, you have the right to make rules and regulations, you can't make them if in conflict with the general statute....

Paieski's only objection to certifying more than four names was the unpersuasive idea that the appointing authority can look at which individuals' names appear farther down the list. But the *entire* list is always publicly posted by law. The appointing authority has a copy of the entire list and does not need the official certification in order to learn what names are farther down upon it.

The group certification regulation is mathematically constructed to facilitate the process when a large number of promotions are to be made (fourteen in this case). If the Commission certified only four names at a time, it obviously would have to make a fresh certification, pursuant to formal action at a meeting, after each and every promotion. The group certification permits the one-out-of-four selection process to be reiterated a number of times without a new certification each time, but the appointing authority must nevertheless follow the statute and stay within the top four names which remain after strike-offs have winnowed the list.

Therefore, although this court does well to read the two statutes in *pari materia*, the other aspects of the decision will unnecessarily cripple the civil service process for merit promotions of the Pittsburgh police which has been lawfully followed for decades.