579 A.2d 1374

**Robert J. CONLEY and William Trempus, Appellants,**

**v.**

**CITY OF PITTSBURGH, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1990.
Decided Sept. 12, 1990.

Stanford A. Segal, Gatz, Cohen, Segal and Koerner, P.A., for appellants.

Joseph F. Quinn, Asst. City Sol., with him, D.R. Pellegrini, City Sol., for appellee.

Before CRAIG and SMITH, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

The question in this case is whether a trial court has equity jurisdiction in a dispute between the City of Pittsburgh and two city firefighters, Conley and Trempus, over the city's practice of assigning the duties of newly created civil service positions to employees in lower positions, working out of grade, rather than filling the positions as provided in the civil service laws.

Conley and Trempus have appealed to this court after the trial court sustained the city's preliminary objections to the trial court's jurisdiction.

This court decided a related issue in *Fire Fighters Local Union No. 1 v. Civil Service Commission of City of Pittsburgh*, 118 Pa.Commonwealth Ct. 498, 545 A.2d 487 (1988), *aff'd per curiam*, 524 Pa. 278, 571 A.2d 377 (1990). In that case, we held that the city's creation of two "assistant director" positions, under the fire chief, as positions *outside* the competitive civil service class, was inconsistent with the Act of June 27, 1939, P.L. 1207, §§ 1–7 (Firefighter's Civil Service Act), *as amended*, 53 P.S. §§ 23491–23497. Because this court determined that the positions were in the competitive class, the city could elect either not to fill the

positions or to fill them in accordance with the Act. *Yuska v. City of Pittsburgh,* 100 Pa.Commonwealth Ct. 169, 514 A.2d 297 (1986).

In this case, the firefighters' complaint alleges that, after our previous decision, the city, rather than announce that the positions were open to competitive examination, elected to assign the duties associated with the new positions to deputy chiefs, the rank immediately beneath the new positions, by appointing those deputies in an acting capacity. In turn, the city allegedly assigned personnel from the next lower rank, battalion chiefs, to act as deputy chiefs. And finally, the allegations are that the city assigned the responsibilities of battalion chiefs to two captains, the rank beneath battalion chiefs.

A provision of the Firefighter's Civil Service Act relating to filling vacancies temporarily, which may be relevant to the firefighters' complaint, reads as follows:

Transfers; temporarily filling vacancies; driving assignments

(a) Whenever in the competitive class of any bureau of fire a vacancy of equal rank shall occur *in another company,* the vacancy shall be filled by transferring the person with the longest period of service within the bureau of fire who requests such transfer. Notice of any such vacancy to be filled shall be prominently posted at all fire stations within five days after the occurrence of the vacancy, and any person desiring such transfer shall submit a written request therefor within ten days of the posting. *A vacancy may be temporarily filled for a period not to exceed fifteen days.* In the event that no person requests such transfer as above set forth, the vacancy may be permanently filled at the discretion of the appointing authority of the bureau of fire.

Driving assignments within a company shall be made on the basis of seniority within that company.

Engine and truck companies housed together shall be considered to be one company except where an engine company and a truck company with the same numbers

are bound together in which case they shall be considered one company and the other company housed in the same facility shall be another company. Squad companies and elevated platforms shall be separate companies.

No such transfer or driving assignment shall be denied the person entitled thereto by reason of seniority unless such person is found to be unable to perform the necessary duties. The denial of any such transfer or driving assignment shall be in writing, and shall state the reasons therefor.

(b) *Any person who is denied a transfer or who is denied a driving assignment* to which he is entitled under subsection (a) of this section *shall, upon written request, be granted a public hearing before the Civil Service Commission.* (Emphasis added.)

Section 3.2 of the Firefighter's Civil Service Act, *as amended*, added by § 2 of the Act of July 3, 1963, P.L. 186, 53 P.S. § 23493.2.

Although Conley and Trempus averred in their complaint that the city was making the out-of-grade assignments for periods "in excess of" fifteen days, their counsel ackowledged below that the city actually has assigned the out-of-grade officers to acting positions for a period of fourteen days, and then returned the officers to their regular positions for one day. The city then again would appoint the officers to out-of-grade acting positions for another fourteen-day period, and so on, allegedly in an attempt to avoid a violation of section 3.2(a). Of course, the firefighters submit that repeated fourteen-day assignments of any one person constitute a violation of the fifteen-day limit.

The firefighters claim that the city, by not announcing a competitive exam to fill the two new positions, essentially is evading compliance with the appointment and promotions provision of the Firefighter's Civil Service Act, § 3.1, added by § 2 of the Act of July 3, 1963, P.L. 186, 53 P.S. § 23493.1.

Conley and Trempus also argue that, contrary to the trial court's conclusion, the civil service laws do not provide an

adequate remedy for the wrong they allege the city is committing, because subsection (b) of section 3.2 provides aggrieved firefighters with the right to a hearing only if they are denied a transfer or a driving assignment, but not when the bureau unlawfully fills a vacancy for a period greater than fifteen days. Thus, they claim the trial court has equity jurisdiction in the matter.

However, the city argues that it is not violating the civil service laws because: (1) the shuffling of personnel at issue does not involve transfers to "another company," as stated in section 3.2; and (2) the city did not *fill* positions under the language of the provision because we should construe the statute as only prohibiting temporarily filling vacancies for more than fifteen *consecutive* days, rather than *total* periods in excess of fifteen days. Furthermore, the city claims that the Act of May 23, 1907, P.L. 206, § 1–29, (General Civil Service Act), *as amended,* 53 P.S. §§ 23431–23462, provides an adequate legal remedy for the wrong Conley and Trempus allege the city has committed.

As the city points out, because the Firefighters Civil Service Act and the General Civil Service Act pertain to the same subject matter, the two should be read, where possible, in *pari materia. See Civil Service Commission v. Paieski,* 126 Pa.Commonwealth Ct. 263, 559 A.2d 121 (1989). Thus, if the Firefighter's Civil Service Act contains specific provisions regarding a civil service matter, those provisions in the General Civil Service Act which are inconsistent will not apply. However, if a matter is not covered under the Firefighter's Civil Service Act, then provisions of the General Civil Service Act apply.

The city does not dispute the point that section 3.2 of the Firefighter's Civil Service Act lacks a specific remedy for alleged violations of the temporary vacancy provision.

Therefore, the pivotal question is whether the General Civil Service Act provides an adequate remedy to address the allegedly unlawful action. If so, they should have pursued that route.

The General Civil Service Act provision, that the city claims provides an adequate remedy, grants powers to the Civil Service Commission as follows:

Powers and duties of commission; rules; approval by mayor; minutes, records, etc.; investigations

First.—Prescribe, amend and enforce rules and regulations for carrying into effect the provisions of this act....

Third.—Make investigations, either sitting as a body or through a single commissioner, concerning all matters touching the enforcement and effect of the provisions of this act, and the rules and regulations prescribed thereunder, concerning the action of any examiner or subordinate or the commission, or of any person in the public service in respect to the execution of this act; and, in the course of such investigations, each commissioner and the chief examiner shall have the power to administer oaths and affirmations, and to take testimony.

Section 6 of the General Civil Service Act, 53 P.S. § 23436.

That language, literally stated, vests in the commission a broad power to investigate and enforce the provisions of the General Civil Service Act. However, because, as noted above, the General Civil Service Act and the Firefighter's Civil Service Act are to be read in *pari materia,* the investigative and enforcement powers under the General Civil Service Act therefore embrace matters originating under the Firefighter's Civil Service Act. Of course, where there is an adequate administrative remedy, subject to review by appeal to the courts, the firefighters must pursue that remedy instead of resorting to equity.

Thus concluding that the trial court correctly dismissed this equity action, this court will affirm and leave the firefighters to pursue their remedy before the Civil Service Commission, with confidence that they will receive a hearing and adjudication there because the city has committed itself in this case to the point that "a clear and adequate legal remedy exists in the Civil Service Commission...." (Conclusion, brief for the City of Pittsburgh.) We would

not expect the city to depart from that position to which it is committed.

With respect to the Civil Service Commission remedy, the firefighters have sought to raise an issue which is not yet ripe for decision. They anticipate that the city solicitor, who is the legal advisor to the Civil Service Commission, will also be actively advocating the city's position against the firefighters with respect to the matter of assigning fire officers to work out-of-grade. Without deciding that question, we note that *Donnon v. Civil Service Commission of Borough of Downingtown*, 3 Pa.Commonwealth Ct. 366, 283 A.2d 92 (1971), has held that a civil service commission should have the benefit of independent legal counsel to advise it when the municipal solicitor is prosecuting or advocating an adversary position in a matter before the commission. Of course, if the firefighters are to have an adequate remedy before the civil service commission in this matter, there must be an assurance that commission can act independently, upon the basis of neutral advice.

This court affirms the order of Judge Farino of the Common Pleas Court of Allegheny County.

PELLEGRINI, J., did not participate in the decision of this case.

### ORDER

NOW, September 12, 1990, the order of the Court of Common Pleas of Allegheny County, dated June 8, 1989, No. G.D. 88–20725, is affirmed.